UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ENERGY CONVERSION DEVICES, INC.,
at al,

          Debtors.
_____/

ENERGY CONVERSION DEVICES
LIQUIDATION TRUST,

          Plaintiff,

vs.

OVONYX, INC., *et al.*,

          Defendants.
_____/

Case No. 12-43166

Chapter 11
(Jointly Administered)[1]

Judge Thomas J. Tucker

Adv. Pro. No. 18-4320

**OPINION AND ORDER DENYING MOTION TO DISMISS FILED BY
DEFENDANTS OVONYX, INC. AND MICRON TECHNOLOGY, INC.**

**I. Introduction**

      The Plaintiff in this adversary proceeding is a liquidation trust that was created under a confirmed Chapter 11 plan. Under the terms of the liquidation trust agreement, the trust terminated on August 28, 2019, due to the passage of time. At the time of that termination, this adversary proceeding had been pending for more than a year, and a great deal of activity had occurred. Now a motion to dismiss, filed only recently by two of the Defendants, requires the Court to consider whether the Plaintiff still has standing to prosecute the claims in this adversary proceeding. The motion was filed almost two years after the liquidation trust terminated, and at

---

[1] This Chapter 11 case is jointly administered with the case of United Solar Ovonic LLC, Case No. 12-43167.

an advanced stage of this litigation, after much discovery has been taken by the parties.

The issue turns on the meaning of a winding-up provision in the liquidation trust agreement. That provision authorizes and requires the liquidation trustee to continue acting after termination of the trust, "for the purposes of liquidating and winding up the affairs of the [trust]," and for those purposes, to "continue to act . . . until its duties have been fully performed."

As explained below, the Court concludes that the Plaintiff still has standing to prosecute this adversary proceeding, and to prosecute it to conclusion.

The present motion to dismiss was filed on August 20, 2021 by two of the Defendants, Ovonyx, Inc. ("Ovonyx") and Micron Technology, Inc. ("Micron").[2] The Plaintiff, the Energy Conversion Devices Liquidation Trust, objected to the motion, and the matter was fully briefed. The Court held a telephonic hearing on November 17, 2021, and then took the motion under advisement.

The Court has considered all of the written and oral arguments of the parties, all of the authorities cited by the parties, and all relevant parts of the record in this adversary proceeding and in the related bankruptcy cases. For the reasons stated below, the Court will deny the motion.

## II. Background and facts

The facts stated in this Section II are undisputed.

## A. Procedural history and background

This adversary proceeding was filed against five defendants by John Madden, Liquidation

---

[2] "Defendants Ovonyx, Inc. and Micron Technology, Inc.'s Motion to Dismiss for Lack of Standing" (Docket # 296).

Trustee, on behalf of the Plaintiff Energy Conversion Devices Liquidation Trust (the "Plaintiff Trust"). The Plaintiff Trust was created as a result of the confirmed liquidation plan in the Chapter 11 bankruptcy cases of Energy Conversion Devices, Inc. ("ECD") and its wholly-owned operating subsidiary, United Solar Ovonic LLC ("USO"). Those Debtors filed their voluntary Chapter 11 bankruptcy petitions in this Court on February 14, 2012.

On July 30, 2012, the Court confirmed a joint liquidating plan proposed by the Debtors (the "Plan").[3] The Plan included the substantive consolidation of the ECD and USO estates. The effective date of the Plan was August 28, 2012.[4]

The Plan provided for a liquidating trust, to be created by and to operate under a trust agreement, and for the appointment of a liquidation trustee. The operative trust agreement is entitled "Liquidation Trust Agreement and Declaration of Trust" (the "Trust Agreement"), and at all times John Madden has been the appointed Liquidation Trustee.[5]

As part of performing his duties under the Trust Agreement, John Madden filed this adversary proceeding on July 12, 2018, and then filed an amended complaint on August 1, 2018 (the "First Amended Complaint"). The First Amended Complaint involves lengthy and complex factual allegations against five defendants, including Ovonyx and Micron.[6]

---

[3] Docket # 1064 in Case No. 12-43166, the "Order Confirming Plan." The Plan was filed on June 20, 2012 (Docket # 754 in Case No. 12-43166).

[4] *See* Notice of Effective Date, etc. (Docket # 1220 in Case No. 12-43166).

[5] A copy of the Trust Agreement is in the record, among other places, at Docket # 1063, Ex. 1, in the lead bankruptcy case, Case No. 12-43166.

[6] The other Defendants were Tyler Lowrey, Ovonyx Memory Technology, Inc., and Intel Corporation. The Court later dismissed the only claim against Tyler Lowrey (the "First Cause of Action"), on October 1, 2020 (Order, Docket # 193). The other Defendants remain in the case.

The First Amended Complaint alleges claims under Michigan law, including claims of breach of contract; claims based on Michigan's alter ego and successor liability doctrines; multiple claims of tortious interference with contract; a claim for aiding and abetting tortious interference with contract, and a claim of "actual" fraudulent transfer (*i.e.*, a transfer done with actual fraudulent intent, rather than merely a constructive fraudulent transfer).

All of the Defendants moved for dismissal under Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. The Defendants' dismissal motions raised numerous issues about the elements of the claims, and many other issues, including but not limited to issues of contract interpretation and contract law; the interplay between related contracts; and the effect of a Chapter 11 debtor's rejection of an executory contract under Bankruptcy Code § 365.

After extensive briefing and a hearing, the Court filed a lengthy written opinion and order on October 1, 2020, granting the Defendants' motions in part and denying them in part.[7] Soon thereafter, the Defendants other than Tyler Lowrey,[8] including Ovonyx and Micron, filed answers to the First Amended Complaint.[9] The case remains pending, under a scheduling order that has been amended twice. The parties continue to conduct discovery.

## B. The current motion to dismiss

---

[7] Docket ## 192, 193. The Court's written opinion is published: *Energy Conversion Devices Liquidation Trust v. Ovonyx, Inc., et al.* (*In re Energy Conversion Devices, Inc.*), 621 B.R. 674 (Bankr. E.D. Mich. 2020).

[8] As noted in footnote 6 above, the claim(s) against Tyler Lowrey were dismissed.

[9] The answers by Ovonyx and Micron both were filed on November 5, 2020 (Docket ## 205, 207).

On August 20, 2021, Ovonyx and Micron jointly filed their current motion to dismiss (the "Motion").[10] In the Motion, Ovonyx and Micron argue that the Plaintiff Trust no longer has standing to prosecute any of the claims in this adversary proceeding, because under Section 6.01 of the Trust Agreement, the Trust terminated on August 28, 2019.

Section 6.01 states:

> Section 6.01  Duration of Liquidation Trust
>
> This Liquidation Trust shall terminate on the date upon which all of the Assets have been distributed to the Beneficiaries and all of the necessary tax returns have been prepared and filed; *provided, however*, that the Liquidation Trust shall terminate no later than the fifth anniversary of the Effective Date; and *provided further, however*, that prior to such termination date, the Liquidation Trustee may seek multiple fixed-term extensions of such termination date from the Bankruptcy Court if the extension is necessary for the liquidating purposes of the Liquidation Trust.  Any such extension must be obtained at least three (3) months before the expiration of the original term and each extended term.[11]

The Plaintiff Trust terminated, under Section 6.01, on August 28, 2019.  This is so because: (1) the "Effective Date," *i.e.*, the effective date of the confirmed Plan in the bankruptcy cases, was August 28, 2012, so that the fifth anniversary of the Effective Date was August 28, 2017; (2) the Plaintiff Trust timely sought and obtained one extension of that 5-year termination date, extending the termination date to August 28, 2019;[12] and (3) the Plaintiff Trust never sought

---

[10] Docket # 296.

[11] Trust Agreement at 23, Section 6.01 (italics in original).

[12] The Plaintiff Trust filed a motion seeking such extension on April 17, 2017 (Docket # 2586 in Case No. 12-43166), and the Court granted the motion on May 5, 2017 (Docket # 2588 in Case No. 12-43166).

5

or obtained a further extension of the termination date.

The Plaintiff Trust concedes that the Trust terminated, under Section 6.01, on August 28, 2019.[13] But Plaintiff opposes the Motion on a number of grounds. One of those grounds is based on Section 6.03 of the Trust Agreement. That section gives the Liquidation Trustee certain winding-up authority, to continue to act after termination of the Trust. It states:

> Section 6.03  <u>Continuance of Liquidation Trust for Winding Up.</u>
>
> **After the termination of the Liquidation Trust and for the purpose of liquidating and winding up the affairs of the Liquidation Trust, the Liquidation Trustee shall continue to act as such until its duties have been fully performed**. Upon termination of the Liquidation Trust, the Liquidation Trustee shall retain for a period of seven years the books, records, Beneficiary lists, Register, and certificates and other documents and files which shall have been delivered to or created by the Liquidation Trustee. At the Liquidation Trustee's discretion, all other records and documents may, but need not, be destroyed at any time after two years from the completion and winding up of the affairs of the Liquidation Trust. Except as otherwise specifically provided herein, upon the termination of the Liquidation Trust, the Liquidation Trustee shall have no further duties or obligations hereunder.[14]

Plaintiff argues that under the first sentence of Section 6.03, the Liquidation Trustee continues to have the authority and duty, after termination under Section 6.01, to prosecute this adversary proceeding to its conclusion, and thereby to liquidate the Trust's claims against the Defendants.

Ovonyx and Micron dispute this, and argue that Section 6.03 cannot be interpreted as broadly as Plaintiff contends, especially given the distinct possibility that litigating this adversary

---

[13] Counsel for the Plaintiff conceded this during the November 17, 2021 hearing.

[14] Trust Agreement at 23, Section 6.03 (emphasis added).

6

18-04320-tjt    Doc 416    Filed 11/24/21    Entered 11/24/21 13:46:09    Page 6 of 15

proceeding to its conclusion, including all appeals, will involve a great deal more work by all parties, and may take several more years.

**III. Discussion**

There is no dispute that when the Liquidation Trustee did each of the following things, the Trust had not yet terminated, and the Trustee had authority and standing, based on terms of the Trust Agreement, to do these things: file this adversary proceeding; file the First Amended Complaint; defend that First Amended Complaint, by extensive briefing and oral argument, against motions to dismiss that were filed by each of the Defendants; and conduct document discovery, subject to the limits of the Court's then-existing scheduling order. And at the time of the hearing on the Defendants' earlier motions to dismiss, the Trust had not yet terminated.

It is further undisputed that until Ovonyx and Micron filed the present motion, on August 20, 2021, they never raised the arguments that the Trust terminated on August 28, 2019, and that such termination deprived Plaintiff of the authority and standing to continue prosecuting this adversary proceeding. Ovonyx and Micron did not raise their current arguments: (1) while the Court had the earlier motions to dismiss under advisement, a period of time that stretched well beyond the August 28, 2019 Trust termination date; (2) at any time before the Court filed its lengthy opinion and order on October 1, 2020; (3) in the answers they filed to the Plaintiff's First Amended Complaint; or (4) during the several years of extensive discovery that occurred in this case.

Ovonyx and Micron argue, however, that their present argument is jurisdictional; *i.e.*, that the termination of the Trust deprives Plaintiff of standing to continue prosecuting this case, and makes the Plaintiff's claims moot. The jurisdictional nature of their argument, Ovonyx and

7

Micron say, makes their argument non-waivable, and requires the Court to dismiss this adversary proceeding, even at this advanced stage.

In support of their position, Ovonyx and Micron rely primarily on two cases: *Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999) and *In re Cleveland Imaging & Surgical Hospital, L.L.C.*, Case No. 14, 34974, 2021 WL 3814865 (Bankr. S.D. Texas, August 26, 2021). In *Goldin*, the Fifth Circuit Court of Appeals held that after a Chapter 11 liquidating trust terminated by its terms on its third anniversary, the liquidating trust no longer had standing to prosecute claims in a pending lawsuit, that such claims were moot, and that dismissal was required.

The liquidating trust in *Goldin* did not contain any provision giving any winding-up authority after termination, and the court relied on Texas law governing trusts to conclude that no such winding-up authority existed. The *Cleveland Imaging* case had facts very similar to those in *Goldin*, and reached the same result, finding the *Goldin* case and Texas trust law dispositive and binding.

The *Goldin* and *Cleveland Imaging* cases are quite different from this case. In this case, the trust agreement at issue does contain a provision expressly giving the Liquidation Trustee winding-up authority, Section 6.03. And Texas trust law has no application in this case.

If any state's trust law applies in this case, it is the trust law of Michigan, based on Section 8.03 of the Trust Agreement, which provides:

> Section 8.04  Governing Law.
>
> Except to the extent the Bankruptcy Code or the Bankruptcy Rules are applicable, this Liquidation Trust Agreement shall be governed by, construed under and interpreted in accordance with,

> the laws of the State of Michigan. Any and all disputes arising under this Liquidation Trust Agreement shall be raised and litigated before the Bankruptcy Court.[15]

Ovonyx and Micron cite a provision in the Michigan trust law statutes that states:

> Upon the occurrence of an event terminating or partially terminating a trust, the trustee shall proceed expeditiously to distribute the trust property to the persons entitled to it . . . .

Mich. Comp. Laws § 700.7821(2).

On the other hand, as Plaintiff points out, Mich. Comp. Laws § 700.7817(nn) gives a trustee winding-up powers, "[o]n termination of the trust, to exercise the powers appropriate to wind up the administration of the trust and distribute the trust property to the persons entitled to it." And Mich. Comp. Laws § 700.7812 states that "[a] trustee shall take reasonable steps to enforce claims of the trust and to defend claims against the trust."

But the most important point about the Michigan trust statutes, as the Plaintiff correctly notes, is that with exceptions not applicable here, the terms of the trust itself "prevail over any provision" in the Michigan statutes. *See* Mich. Comp. Laws § 700.7105(2). The winding-up provision in Section 6.03 therefore controls in determining what authority and duties the Liquidating Trustee has after termination of the Trust.

The Court finds and concludes that despite the termination of the Trust under Section 6.01, Section 6.03 of the Trust Agreement unambiguously gives the Liquidation Trustee both the authority and a duty to continue prosecuting this adversary proceeding to conclusion. And this includes prosecution of all claims asserted in the First Amended Complaint, and in any amended complaint that the Court grants leave for Plaintiff to file against the present Defendants in this

---

[15] Trust at 26, Section 8.04.

9

18-04320-tjt    Doc 416    Filed 11/24/21    Entered 11/24/21 13:46:09    Page 9 of 15

adversary proceeding. The Plaintiff Trust therefore does continue to have standing to prosecute this case, and prosecute it to conclusion, including any and all appeals by any party, no matter how long that may take.

In the Court's view, all of this is clear from the first sentence of Section 6.03, and is not inconsistent with any other language in the Trust Agreement.

As quoted above, the first sentence of Section 6.03 not only authorizes, but also *requires*, that after termination of the Trust under Section 6.01, the Liquidation Trustee "continue to act" as Liquidation Trustee "until its duties have been fully performed." That provision, however, is qualified by the requirement that the Trustee's continuing actions be "for the purpose of liquidating and winding up the affairs of the Liquidation Trust."

The Court first will discuss the scope of the Liquidation Trustee's "duties" referred to in Section 6.03, as they relate to prosecuting causes of action owned by the Trust. Against that backdrop, the Court then will discuss the meaning of the winding-up provision in Section 6.03.

It is clear, and undisputed, that the Liquidation Trustee's duties include liquidating "the Assets transferred to [the Trust] on the Effective Date;" and that those "Assets" include claims such as those alleged against the Defendants in this adversary proceeding.[16] As with all "Assets," the Trustee's duties include liquidating such claims "consistent with the objective of maximizing value" of such claims,[17] and doing so "in a cost-effective manner in a reasonable time . . ."[18]

---

[16] *See* Trust at 1, Recital D; 2, Section 1.01 (definitions of "Assets," "Causes of Action" and "Claims"); 7, Section 2.03; 8, Section 2.08(a); 9, Section 2.08(b); 9, Section 2.09(b); 12-13, Sections 4.04(f), 4.04 (k), and 4.04(n).

[17] *See* Trust at 8, Section 2.08(a).

[18] *See id.* at 9, Section 2.08(b).

10

It is also clear that the Liquidation Trustee has not "fully performed" his duties, as that phrase is used in Section 6.03, until he has liquidated the claims against the Defendants in this case, including Ovonyx and Micron. The liquidation of the claims means prosecuting them to judgment and collection of any money judgment obtained, and prosecuting and defending all appeals, or, alternatively, settling some or all of the claims under the procedures specified by the Trust Agreement.

Further, the Trust Agreement requires the Trustee to take specific actions in order to obtain any settlement. First, for any settlement "where the amount in controversy equals or exceeds $100,000," Section 4.06 of the Trust Agreement requires the Trustee to obtain the approval of this Court under Fed. R. Bankr. P. 9019. Under applicable rules, that means the Trustee must file a motion seeking this Court's approval of the settlement, and file and serve a 21-day notice of the motion. And under Section 4.06, "each creditor or party in interest will have standing to object to any such settlement."[19] Second, for settlement of any claims less than $100,000, Section 4.06 requires the Trustee to "consult with the Liquidation Trust Oversight Committee prior to and in connection with any such settlement."[20]

In the Court's view, Section 6.03 clearly means that the Liquidation Trustee can, and indeed must, "continue to act" as Liquidation Trustee even after termination of the Trust under Section 6.01, until, among other things, he has liquidated the claims against the Defendants in this adversary proceeding.

---

[19] *Id.* at 13, Section 4.06.

[20] *Id.* The Liquidation Trust Oversight Committee is a body established by the Trust Agreement to exercise certain supervisory authority over the Liquidation Trustee, and for certain other purposes. *See, e.g.*, Trust Agreement at 14, Section 4.07.

11

This view is consistent with the winding-up language in Section 6.03. Under that language, the Trustee's post-termination duty to continue is qualified by the requirement that the Trustee's continued actions must be "for the purpose of liquidating and winding up the affairs of the Liquidation Trust." Ovonyx and Micron stress that this language refers to "liquidating . . . the affairs of the Liquidation Trust," rather than the arguably broader concept of liquidating *the Trust Assets*. Defendants argue that this "purpose" language must mean that the Trustee's winding-up authority is something less than simply continuing to litigate to conclusion, possibly for years, any lawsuit that happens still to be pending when the Section 6.01 termination occurs.

In arguing that the Liquidation Trustee no longer has standing, Ovonyx and Micron say, they are not asserting that *no one* has authority and standing to prosecute the claims alleged in this case. They speculate, for example, that after the termination of the Trust perhaps the individual beneficiaries of the trust would have such standing. Those beneficiaries, who are defined as "Beneficiaries" in Section 1.01 of the Trust Agreement, essentially are the creditors with allowed unsecured claims in the underlying bankruptcy cases.

The Court agrees that the Trustee's winding-up authority under Section 6.03 must mean something less than the Trustee simply continuing to liquidate any and all "Assets" even after the Trust has terminated under Section 6.01. But Section 6.03 cannot reasonably be read as narrowly as Ovonyx and Micron argue. In the case of Trust "Assets" of the kind involved here — causes of action — the Court finds that the only reasonable reading of Section 6.03 is that it includes, *at least*, the following winding-up authority: that after the Trust has terminated under Section 6.01, the Liquidation Trustee may and must continue to prosecute lawsuits that are still pending at the time of termination, and prosecute them to conclusion, whether that be to a final judgment

12

(including any and all appeals), or to a settlement, and collect and distribute any proceeds obtained from them. And such authority to continue prosecuting lawsuits pending at termination of the Trust includes prosecuting any amended or additional claims later added, with leave of Court under applicable rules of procedure, against the same Defendants who were already in the pending lawsuit before termination of the Trust.

All of these things clearly fall within the concept of the Trustee "liquidating and winding up the affairs of the Liquidation Trust," within the meaning of Section 6.03. *Cf. Krys v. Aaron*, 106 F. Supp. 3d 492, 505-06 (D. N.J. 2015) (citations omitted) (finding that language of a liquidation trust agreement implicitly recognized "the Trustee's post-termination authority to wind down the Trust . . ." *and* that such authority "necessarily includes the Trustee's continued latitude to prosecute [causes of action]").

The contrary, narrower view of Section 6.03 argued by Ovonyx and Micron is plainly not a reasonable interpretation of Section 6.03. It would mean that instead of winding up the liquidation of the claims in this case, the Trustee would have to immediately stop all work on the case. Here the following analogy comes to mind. In prosecuting this adversary proceeding for more than a year before the Trust terminated, the Liquidation Trustee was like the pilot of an airplane full of passengers (the Beneficiaries) in mid-air, flying toward a planned destination (liquidation of the claims). Under the Court's view of Trust Section 6.03, after termination of the Trust, the pilot would complete the flight to the planned destination, and land the plane safely (complete the liquidation of the claims). Under the Ovonyx/Micron view of Section 6.03, after termination of the Trust, the pilot would have to bail out of the plane in mid-air, and hope that one or more of the passengers (the Beneficiaries) could fly the plane to its destination and land it

13

safely. Such a view of Section 6.03 is plainly unreasonable, and could not have been the intention behind the wording in Sections 6.01 and 6.03 of the Trust Agreement.[21]

This adversary proceeding, and Plaintiff's First Amended Complaint, were pending against Ovonyx, Micron, and all the other current Defendants for more than a year before the Trust terminated under Section 6.01. The Court's ruling above means that the Plaintiff Trustee has the authority and duty, under Section 6.03 of the Trust, to continue prosecuting to conclusion all claims in this adversary proceeding, including any amended or additional claims that may be added in the future against any of the current Defendants, with leave of this Court under applicable rules of procedure.[22] The Motion therefore must be denied.

It is not necessary, in ruling on the present Motion, for the Court to comprehensively define what are the outer limits of the Liquidation Trustee's winding-up authority and duties under Section 6.03. For example, it is not necessary at this time to decide whether Section 6.03 would permit the Liquidation Trustee to file any new lawsuit(s) against any new defendant(s) in

---

[21] Ovonyx and Micron argue that Plaintiff took a contrary position in 2017, when Plaintiff moved for the two-year extension of the Trust. *See* footnote 12. The Court disagrees. That motion was filed in the ECD bankruptcy case on April 17, 2017 (Docket # 2586 in Case No. 12-43166), which was more than a year before the Plaintiff filed this adversary proceeding. In that motion, the Plaintiff Trust stated that the two-year extension of the Trust's term was "warranted" and "necessary" because of five uncompleted, major tasks that the Trust identified, three of which did not involve litigation, and two of which were pending "litigation actions" that were on appeal. (*See id.* at ¶¶ 6, 9-11). The motion said nothing about this adversary proceeding, and said nothing about the winding-up provision in Section 6.03 or its meaning. And the motion did not say or imply that an extension of the Trust's term under Section 6.01 would be necessary if, as here, the *only* task remaining was the completion of one specific piece of pending litigation.

[22] For example, by separate order being entered today, under Fed. R. Civ. P. 15(a)(2) and 16(b)(4), the Court is granting a contested motion by the Plaintiff Trust to file a second amended complaint, which adds Micron as a defendant to the Plaintiff's Fifth Cause of Action. With that amendment, Micron will join the existing Defendant, Ovonyx Memory Technology, LLC, as a defendant to that Cause of Action.

the future, as Plaintiff's counsel suggested during the hearing. That issue is not now before the Court.

In addition, the Court's ruling makes it unnecessary to discuss the other arguments made by the Plaintiff in opposing the Motion.

## IV.  Conclusion

For the reasons stated above,

IT IS ORDERED that the Motion (Docket # 296) is denied.


**Signed on November 24, 2021**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker
United States Bankruptcy Judge**