UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ENERGY CONVERSION DEVICES, INC., *et al,*

        Debtors.
_____/

Case No. 12-43166

Chapter 11
(Jointly Administered)[1]

Judge Thomas J. Tucker

ENERGY CONVERSION DEVICES LIQUIDATION TRUST,

        Plaintiff,

vs.

OVONYX, INC., *et al.*,

        Defendants.
_____/

Adv. Pro. No. 18-4320

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENT FROM DEFENDANT MICRON TECHNOLOGY, INC.**

**I. Introduction**

In this adversary proceeding the Court must decide whether a specific document that the Plaintiff seeks in discovery is protected by the attorney-client privilege. The Defendant Micron Technology, Inc. ("Micron") argues that the document is privileged. The Plaintiff argues that it is not. The Court agrees with the Plaintiff, and will order Micron to produce the document.

**II. Background**

This adversary proceeding is before the Court on the Plaintiff's motion, entitled "Plaintiff

---

[1] This Chapter 11 case is jointly administered with the case of United Solar Ovonic LLC, Case No. 12-43167.

Energy Conversion Devices Liquidation Trust's Motion to Compel Production of Document claimed by Defendant Micron Technology, Inc. As Privileged" (Docket # 633, the "Motion").[2] Defendant Micron filed a response, objecting to the Motion.[3] Plaintiff filed a reply in support of the Motion.[4] The Court held a telephonic hearing on July 6, 2022.

Confirming action taken during the hearing, the Court entered an Order on July 6, 2022, requiring Micron to file, under seal, the spreadsheet document that is the subject of the Motion (the "Document"), so that the Court could conduct an *in camera* review of the Document.[5] Micron filed the Document under seal as required, on July 7, 2022,[6] and the Court has reviewed the Document. The Motion is now ready for decision.

The Court described the Plaintiff's claims in this adversary proceeding, and a great deal of background and facts involved, in a prior opinion, and refers the reader to that opinion for background on this complex litigation. *See Energy Conversion Devices Liquidation Trust v. Ovonyx, Inc.* (*In re Energy Conversion Devices, Inc.*), 621 B.R. 674 (Bankr. E.D. Mich. 2020).

## III. Relevant facts, and Micron's privilege claim

The Document is identified in the Motion as being bates-stamped "DP__Micron_0001289." It is an Excel spreadsheet. Information disclosed to the Plaintiff

---

[2] Docket # 633 is the redacted version of the Motion; the unredacted version was filed under seal at Docket # 634.

[3] Docket # 645 is the redacted version of the response; the unredacted version was filed under seal at Docket # 646.

[4] Docket # 654 is the redacted version of the reply; the unredacted version was filed under seal at Docket # 655.

[5] Order (Docket # 659).

[6] Docket # 663.

indicates that the title of the Document is "NPV cacl of Ovonyx royalty payments.xlsx." Micron has described the Document, which Micron says its employees created in 2013, in this way:

> [T]he Excel spreadsheet at issue (the "Royalty Spreadsheet") analyzes the possibility that companies selling certain memory products could owe royalty payments to Ovonyx in the future. The evidence shows that multiple former Micron employees worked on the Royalty Spreadsheet together and specifically consulted Steve Arnold, a former in-house intellectual property attorney, to obtain legal analysis of potential royalty obligations that could be owed to Ovonyx under various license agreements. The Royalty Spreadsheet both contains and reflects aspects of Mr. Arnold's resulting legal analysis. Moreover, the purpose of the Royalty Spreadsheet was to provide legal advice and guidance to Micron in the specific context of efforts to negotiate a license agreement with Ovonyx in 2013.[7]

Based on these facts, Micron says, the Document is protected by the attorney-client privilege.[8]

The Document does not contain, on its face, any words that look explicitly like legal advice. It contains, basically, many labels and numbers, as do most spreadsheets. This was acknowledged by Mircron's counsel during the hearing, and is confirmed by the Court's *in camera* review of the Document. But Micron argues that the Document is privileged because it reflects the *result* of legal analysis and legal advice given by Micron's in-house attorney to other Micron employees who helped prepare the spreadsheet.

The Plaintiff disagrees with Micron's privilege claim. The Plaintiff argues that the

---

[7] Def. Micron's sealed Br. (Docket # 646) at 5.

[8] *Id.* Micron does not claim that the Document is protected by the attorney work-product privilege. (Def. Micron's Br. (Docket # 645) at pdf p. 8 n.4.)

3

Document was never privileged, because it provides Micron only with financial and business information and advice, not legal advice.

The Plaintiff also argues that even if the Document originally was privileged, Micron waived that privilege when it voluntarily gave the Document to a third party in 2015. The third party was a financial consultant that Micron retained — Duff & Phelps.

Micron admits that its non-lawyer, financial personnel provided the Document to Duff & Phelps in 2015, as part of responding to a request for information from Duff & Phelps. But Micron disputes that this waived the attorney-client privilege. Micron has stated the following, among other things, about the facts relevant to the Plaintiff's waiver argument:

> Here, Micron engaged Duff & Phelps to perform a valuation of rights that Micron obtained as part of the July 2015 transactions in which Micron acquired all remaining stock of Ovonyx (collectively, the "2015 Transactions"). Because the 2015 Transactions were extremely complex, it was necessary for Micron lawyers to be able to explain certain aspects of them to Duff & Phelps; otherwise, Duff & Phelps would not have been able to perform its valuation work correctly. Therefore, even if Duff & Phelps was providing financial advice, Micron's disclosures to Duff & Phelps were in furtherance of providing legal services to Micron. The Court should conclude that the Royalty Spreadsheet remains protected by the attorney-client privilege and deny the Trust's Motion.[9]

Micron also has stated the following:

> After the closing of the 2015 Transactions, Micron engaged Duff & Phelps to provide valuation services. As explained in Duff & Phelps' written report, its scope of work included valuing the "intellectual property ('IP') license to Ovonyx patents that Micron received as part of the transaction . . . ." Micron incorporated the results of Duff & Phelps' work into its financial records, including with respect to the allocation of the purchase price for the Ovonyx

---

[9] Def. Micron's sealed Br. (Docket # 646) at 2.

> entity.
>
> Duff & Phelps required Micron to provide it with various information in order to conduct its analysis.[10]

The Duff & Phelps valuation report, referred to by Micron above, has been produced in discovery. And a Micron representative has testified about the purpose of the Duff & Phelps analysis and report, as follows:

> [T]he fundamental purpose of the Duff & Phelps analysis was a cost allocation. It was an effort to figure out: Okay, so X dollars were paid, how do we allocate those X dollars across assets?[11]

**IV. Discussion**

The parties and the Court agree that state law, rather than federal law, governs this privilege dispute, based on Fed. R. Evid. 501.[12] That rule provides, in relevant part, that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." State law, rather than federal law, supplies the rule of decision for the Plaintiff's claims against Micron in this adversary proceeding, so state law governs this privilege dispute.

The parties and the Court further agree, for reasons not worth mentioning here, that there are two possible choices of state law that could apply to this privilege dispute — the law of Michigan and the law of Idaho. And all agree that the Court does not need to choose which

---

[10] *Id.* at 4-5 (record citations omitted).

[11] Tr. of May 4, 2022 Dep. of David Westergard at 178 (Ex. A to Pl.'s sealed Reply Br. (Docket # 655)).

[12] The Federal Rules of Evidence apply in this adversary proceeding. *See* Fed. R. Bankr. P. 9017.

state's law applies, because the relevant law of privilege is substantially the same in these two states.

Micron *may be* correct that the excel spreadsheet at issue (the "Document"), or at least some parts of it, were protected by the attorney-client privilege when the Document was created in 2013. But the Plaintiff cites at least one contrary case that is on point, except that it apparently applies Ohio law. *See William F. Shea, LLC v. Bonutti Rsch., Inc.*, No. 2:10-cv-615, 2013 WL 1499609, at *2 (S.D. Ohio, Apr. 11, 2013) (holding that a defendant's spreadsheets estimating the value of certain of its patents were not privileged, even though they contained data that was the product of in-house legal advice).[13]

The Court does not need to decide whether the Document was privileged originally,

---

[13] The *Shea* court reasoned:

> Despite BRI's arguments as to the source of the figures appearing on the spreadsheets (*i.e.,* allegedly the product of legal advice given by BRI's patent counsel), the fact remains that the spreadsheets themselves contain only financial data and calculations; the documents at issue do not, on their face, contain legal advice.
> . . . .
>
> The fact that [BRI's in-house patent counsel] may have provided legal advice in the course of arriving at the valuation projections contained on the spreadsheet does not transform the spreadsheet itself into a privileged document. As described by the parties, the spreadsheets' purpose was to show value of assets, not necessarily to communicate legal advice.
>
> This is not to say that Shea is entitled to learn the contents of every communication that went into the creation of the spreadsheet.
> . . . .
>
> By viewing these spreadsheets, Shea will learn information regarding the value placed on the assets; it will not learn the contents of attorneyclient communications giving legal advice.

2013 WL 1499609, at *2.

6

18-04320-tjt    Doc 664    Filed 07/08/22    Entered 07/08/22 13:28:42    Page 6 of 9

because even if it was, Micron clearly waived that privilege, when it gave the Document to Duff & Phelps in 2015.

Micron acknowledges that it waived any attorney-client privilege for the Document when it gave the document to Duff & Phelps in 2015, **unless**, in the words of an Idaho case, Duff & Phelps was "furthering the rendition of professional legal services to" Micron, or, in the words of a Michigan case, Micron gave Duff & Phelps the Document "in furtherance of legal services." *See Kirk v. Ford Motor Co.*, 116 P.3d 27, 34 (Idaho 2005); *Fox v. Massey-Ferguson, Inc.*, 172 F.R.D. 653, 670 (E.D. Mich. 1995), *aff'd sub nom. Fox v. Variety Corp.*, 91 F.3d 143 (6th Cir. 1996).[14]

Duff & Phelps clearly was not engaged by Micron to provide, and did not provide, any legal services. Micron's counsel admitted this during the hearing. Rather, the undisputed facts show that Duff & Phelps was engaged to provide valuation and cost accounting services for Micron. It was not engaged to give Micron legal advice, or any other kind of legal services. When Micron gave the Document to Duff & Phelps, it clearly did not do so to further the rendition of legal services by Duff & Phelps to Micron. Thus, Micron waived any attorney-client privilege that previously may have covered the Document. Today the Document is not protected by the attorney-client privilege.

In short, the Court agrees with the Plaintiff's waiver argument:

> [Duff & Phelps] received this document solely to provide a cost accounting valuation–a purely ordinary course business activity. It is undisputed that the purpose of [Duff & Phelp's] engagement was to provide a valuation untethered to any litigation or legal matter, and thus Micron's business person delivering to [Duff &Phelps]

---

[14] *See* Def. Micron's Br. (Docket # 645) at pdf p. 16.

the Excel Spreadsheet–which existed before D&P was
engaged–waived any privilege.[15]

For these reasons, the Court must grant the Plaintiff's Motion, and will order Micron to produce the Document.

The Court will next address the matter of discovery sanctions under Fed. R. Civ. P. 37.[16] Subject to certain exceptions, when the Court grants a motion to compel discovery it must require the opposing party or its attorney, or both, to pay the moving party "the reasonable expenses incurred in making the motion, including attorney's fees." See Fed. R. Civ. P. 37(a)(5)(A). For this Motion, the Plaintiff did not request such expenses. The Court will not award such expenses for this Motion, because the Court concludes that under the circumstances of this Motion, and under the circumstances of this case, which has not previously required the Court to address any discovery disputes, an award of expenses would be "unjust." See Fed. R. Civ. P. 37(a)(5)(A)(iii).

## IV. Conclusion and Order

For the reasons stated above,

IT IS ORDERED that:

1. The Motion is granted.

2. No later than Monday, July 11, 2022 at 12:00 noon, Eastern Daylight Time, Micron must deliver to the Plaintiff's counsel, by e-mail or hand-delivery, a complete and legible copy of the Document.

---

[15] Pl.'s sealed Br. in Supp. of Mot. (Docket # 634, Ex. 3) at 18.

[16] Civil Rule 37 applies in this adversary proceeding. See Fed. R. Bankr. P. 7037.

3. The Court does not award any expenses to the Plaintiff under Fed. R. Civ. P. 37(a)(5)(A).

**Signed on July 8, 2022**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker
United States Bankruptcy Judge**