UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

ENERGY CONVERSION DEVICES, INC., at al,

                Debtors.
_____/

Case No. 12-43166

Chapter 11
(Jointly Administered)[1]

Judge Thomas J. Tucker

ENERGY CONVERSION DEVICES
LIQUIDATION TRUST,

                Plaintiff,

vs.

OVONYX, INC., *et al.*,

                Defendants.
_____/

Adv. Pro. No. 18-4320

**OPINION REGARDING (1) THE MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT IN PART, FILED BY DEFENDANTS OVONYX, INC. AND MICRON TECHNOLOGY, INC.; (2) THE MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT IN PART, FILED BY DEFENDANT OVONYX MEMORY TECHNOLOGY, INC.; AND (3) PLAINTIFF'S MOTION FOR RECONSIDERATION AND MODIFICATION OF THE COURT'S OCTOBER 1, 2020 PARTIAL DISMISSAL ORDER**

       This adversary proceeding is before the Court on the following three motions:

(1) the motion entitled "Defendants Ovonyx, Inc. and Micron Technology, Inc.'s Motion to Dismiss Third Amended Complaint and to Strike or Dismiss In Part Alter Ego Claim" (Docket # 504, the "Ovonyx/Micron Motion to Dismiss");

(2) the motion entitled "Defendant Ovonyx Memory Technology, Inc.'s Motion to Dismiss Third Amended Complaint" (Docket # 505, the "OMT Motion to Dismiss"); and

(3) the motion entitled "Plaintiff Energy Conversion Devices Liquidation Trust's Motion

---

[1] This Chapter 11 case is jointly administered with the case of United Solar Ovonic LLC, Case No. 12-43167.

Pursuant to Rule 54(b) for Reconsideration and Modification of the Court's Order Partially Granting the Motions to Dismiss With Respect to The Trust's Asset Right of First Refusal" (Docket # 537, the "Plaintiff's Motion for Reconsideration" or "Plaintiff's Motion").[2]

Each of these motions is contested, and the parties filed extensive briefs and exhibits. The Court held a telephonic hearing on the motions. The Court has considered all of the written and oral arguments made by the parties, in support of and in opposition to these motions, and all of the papers filed by the parties, including the unredacted versions of all such papers that were filed under seal, as well as other relevant parts of the record in this adversary proceeding. For the following reasons, the Court will enter an order (1) denying the Plaintiff's Motion for Reconsideration; and (2) granting the Ovonyx/Micron Motion to Dismiss; and (3) granting the OMT Motion to Dismiss.

**First**, the Court reiterates, and incorporates by reference into this Opinion, the Court's Opinion filed October 1, 2020 (Docket # 192, the "First Opinion").[3] That First Opinion described, in great detail, why the Court granted in part, and denied in part, motions by the Defendants to dismiss the Plaintiff's First Amended Complaint.

**Second**, the Plaintiff's Motion is, in substance, a motion seeking reconsideration of the Court's First Opinion and the resulting Order filed the same day (Docket # 193, the "October 1, 2020 Order"). As such, the Plaintiff's Motion is untimely, under L.B.R. 9024-1(a)(1) (E.D.

---

[2] Docket # 537 is the redacted version of this motion, with redacted brief attached. Docket # 538 is the unredacted version of the same motion and brief, filed under seal.

[3] The First Opinion is published: *Energy Conversion Devices Liquidation Trust v. Ovonyx, Inc., et al.* (*In re Energy Conversion Devices, Inc.*), 621 B.R. 674 (Bankr. E.D. Mich. 2020). In this Opinion, citations to the First Opinion will first cite page numbers in the version filed at Docket # 192, and then page numbers from the version published at 621 B.R. 674.

Mich.),[4] because it seeks reconsideration of the October 1, 2020 Order, but was filed more than 14 days after the entry of that Order.

**Third**, as a motion for reconsideration, the Plaintiff's Motion must be denied because it "merely presents the same issues ruled upon by the [C]ourt, either expressly or by reasonable implication," in the Court's First Opinion and the October 1, 2020 Order. *See* L.B.R. 9024-1(a)(3) (E.D. Mich.).[5]

**Fourth**, as a motion for reconsideration, the Plaintiff's Motion must be denied because it fails to "demonstrate a palpable defect by which the [C]ourt and the parties have been misled," and "that a different disposition of the case must result from a correction thereof." *See* L.B.R. 9024-1(a)(3) (E.D. Mich.).[6] In the Court's view, there is no error, let alone any "palpable defect," in any respect in the Court's October 1, 2020 Order, for the reasons stated in the Court's First Opinion, and also for the additional reasons discussed in this Opinion, below.

**Fifth**, if and to the extent that the Plaintiff's Motion can be viewed, in whole or in part, as

---

[4] That local rule states that "[t]he deadline to file a motion for reconsideration of an order or judgment on the grounds that it was erroneous in fact or law is 14 days after the entry of the order or judgment."

[5] That local rule states that "[g]enerally, and without restricting the discretion of the court, a motion for reconsideration that merely presents the same issues ruled upon by the court, either expressly or by reasonable implication, will not be granted." *See also Fieger & Fieger P.C. v. Nathan* (*In re Romanzi*), No. 16-cv-13986, 2017 WL 1130091, at *1 (E.D. Mich. Mar. 27, 2017). As the United States Court of Appeals for the Sixth Circuit has held, "reconsideration motions cannot be used as an opportunity to re-argue a case." *Bank of Ann Arbor v. Everest Nat'l Ins. Co.*, 563 F. App'x 473, 476 (6th Cir. 2014).

[6] That local rule states that in a motion for reconsideration "[t]he movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof." "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.'" *Fieger & Fieger P.C. v. Nathan,* 2017 WL 1130091, at *2 (citations omitted).

a motion based on Fed. R. Civ. P. 54(b) (which applies in adversary proceedings under Fed. R. Bankr. P. 7054(a)), the Motion does not demonstrate any valid ground for relief. The October 1, 2020 Order is an interlocutory order, rather than a final order, to which the following language in Rule 54(b) applies:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). The Court agrees with the Defendants' following statements about the standards that apply under Rule 54(b):

> Courts will reconsider interlocutory orders under Rule 54(b) only when the movant demonstrates: "(1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); *see also Luna v. Bell*, 887 F.3d 290, 297 (6th Cir. 2018) (same).
> . . . .
>
> Parties should use Rule 54(b) motions "sparingly and in rare circumstances," and the court should decline to revise its prior rulings "in the vast majority of instances, especially where such motions merely restyle or [rehash] the initial issues." *McDonald v. City of Memphis*, No. 12-2511, 2013 WL 3753628, at *1 (W.D. Tenn. July 15, 2013) (citations omitted).[7]

None of the Rule 54(b) grounds for relief described above apply to the October 1, 2020 Order. Plaintiff cites no "intervening change in controlling law," and Plaintiff cites no "new evidence available" that is material and that was not available when the Court heard, and later

---

[7] Defs.' . . . Resp. in Opp'n. [etc.] (Docket # 575) at pdf pp. 13-14.

ruled on, the motions in the October 1, 2020 Order. Nor is there a "need to correct a clear error" in the October 1, 2020 Order, or to "prevent manifest injustice."

**Sixth**, the Court finds and concludes as follows, which will further respond to certain arguments made in the Plaintiff's Motion. Capitalized terms used below have the meanings given to them in the First Opinion, unless otherwise stated.

1. The Court reiterates the ruling made in its First Opinion that "even if the First Refusal Right" under the 1998 Contract, "which allegedly was incorporated into the 1999 License Agreement," "had still existed in July 2015," rather than having been permanently extinguished by the 2000 Stockholders Agreement, there was no "obligation [imposed] on *Ovonyx* to honor ECD's First Refusal Right, under the plain meaning of the language used in the 1998 Contract[.]"[8] Rather, "[t]he First Refusal Right in the 1998 Contract only imposed obligations on ECD and Lowrey."[9] This is so for the reasons stated in the First Opinion,[10] and there is no contractual ambiguity about this. And this is so, unambiguously, as to the entire First Refusal Right, as applicable to both sales of Ovonyx stock by either ECD or Lowrey (what the Plaintiff's Motion now calls the "Stock ROFR") and sales of stock or assets by Ovonyx (what the Plaintiff's Motion now calls the "Asset ROFR").[11] And this is so, unambiguously, with respect both to the 2015 "Ovonyx-OMT Transfer" and the 2015 "4th Amendment," as those terms are defined in the

---

[8] First Opinion (Docket # 192) at 80 (italics in original); 621 B.R. at 729.

[9] *Id.*

[10] For example, *see id.*

[11] *See* Plaintiff's Motion (Docket # 537) at pdf pp. 2, 17, 20-21, 25.

5

Plaintiff's Motion.[12]

This is far from being an absurd result. Rather, it makes sense, given that at the time of the 1998 Contract, ECD and Lowery together clearly knew and contemplated that they would have sufficient control of the Entity to be formed (later, Ovonyx), such as by means of stock ownership and Board control, that they could cause Ovonyx to honor the First Refusal Right. This is apparent from the terms in the 1998 Contract about that subject, discussed in the First Opinion.[13]

Nor does the Plaintiff's argument about what it calls the "Termination Return Right," in paragraph 17 of the 1998 Contract, support the Plaintiff's interpretation of paragraph 11. And in any event, it appears that the type of "termination" that would make the Termination Return Right applicable may be only a "termination" as described under paragraph 16 of the 1998 Contract.[14] As the Plaintiff's counsel conceded during the hearing on Plaintiff's Motion, the time has long passed since any of the specific events listed in paragraph 16 could trigger such a termination.[15]

    2. The Court reiterates the ruling made in its First Opinion that the First Refusal Right in the 1998 Contract, which allegedly was incorporated into the 1999 License Agreement, was superseded by paragraph 9.10 of the 2000 Stockholders Agreement, and thereby was permanently

---

[12] *See id.* at pdf pp. 2 n.1, 3; Pl's Br. (Docket # 538, filed under seal) at 3.

[13] *See, e.g.,* First Opinion at 5-7; 621 B.R. at 685-86.

[14] A copy of paragraphs 16 and 17 in the 1998 Contract appears as part of Exhibit 1 to the Declaration of Eric Winston (Ex. 5 to Docket # 538), at page MTI000034 (filed under seal).

[15] *See* Hearing Tr. (Docket # 704) at 51-52.

and completely extinguished when ECD and the other parties entered into the 2000 Stockholders Agreement. This is so for the reasons stated in the First Opinion,[16] and there is no contractual ambiguity about this. And this is so, unambiguously, as to the entire First Refusal Right, as applicable to both sales of Ovonyx stock by either ECD or Lowrey (the "Stock ROFR") and sales of stock or assets by Ovonyx (the "Asset ROFR"), as those terms are defined in the Plaintiff's Motion. And this is so, unambiguously, with respect both to the 2015 "Ovonyx-OMT Transfer" and the 2015 "4th Amendment," as those terms are defined in the Plaintiff's Motion.

As the Court held, in part, in the First Opinion,

> The Court finds and concludes, based on paragraph 9.10 of the 2000 Stockholders Agreement, that the 2000 Stockholders Agreement superceded the 1998 Contract with respect to ECD's First Refusal Right. Because certain provisions of the 2000 Stockholders Agreement conflicted with, and were inconsistent with, ECD's First Refusal Right under the 1998 Contract, such right was extinguished by the 2000 Stockholders Agreement.
> . . . .
>
> ECD's First Refusal Right granted in paragraph 11 of the 1998 Contract clearly conflicts with, and is inconsistent with, many of the provisions of the 2000 Stockholders Agreement, including provisions in sections 4 ("<u>Restrictions on Transfer of Stockholder Shares</u>"), 6 ("<u>Intel Right of First Offer</u>"), and 7 (<u>Obligations in Connection With Approved Sale</u>").
> . . . .
>
> **d. ECD's First Refusal Right did not spring back to life because of any events that occurred after ECD entered the 2000 Stockholders Agreement.**
>
> . . .
>
> ECD's First Refusal Right was a *right*, which was superseded and thereby extinquished when ECD entered into the 2000 Stockholders Agreeement with Ovonyx, Lowery, Intel, and Ward

---

[16] *See id.* at 64-81; 621 B.R. at 719-29.

7

18-04320-tjt    Doc 729    Filed 10/13/23    Entered 10/13/23 17:08:59    Page 7 of 10

Parkinson. That agreement gave the shareholders of Ovonyx detailed notice and first offer rights with respect to a sale of Ovonyx stock by any of the shareholders and with respect to certain sales of Ovonyx assets. As discussed above, these rights were wholly inconsistent with ECD's First Refusal Right under the 1998 Contract and the 1999 License Agreement, and therefore the 2000 Stockholders Agreement expressly superseded ECD's First Refusal Right.

. . . [T]he 2000 Stockholders Agreement superceded, and thereby *terminated*, ECD's First Refusal Right. *See Salvage I Enters., Inc. v. Dayton Hudson Corp.*, 870 F.2d 657 (6th Cir. 1989) (unpublished) (quoting, with approval, the district court's holding that under Michigan law, when one agreement supercedes an earlier agreement, "'the effect is to supersede and rescind the earlier contract, leaving the later agreement as the only agreement of the parties on the subject.'" (quoting *Joseph v. Rottschafer*, 227 N.W. 784, 786 (Mich. 1929)).
. . . .

[W]hen ECD's First Refusal Right was superceded and thereby terminated, upon ECD's entry into the 2000 Stockholders Agreement, that was a permanent extinguishment of that First Refusal Right, by agreement of the parties, including ECD. ECD's First Refusal Right was not placed in some sort of suspended animation in 2000; it was terminated in 2000.[17]

The Plaintiff argues that the 2015 transfers involved in what the Plaintiff calls the "Ovonyx-OMT Transfer" and the "4th Amendment" did not fall under the definition of a "Sale Event," that would trigger Intel's right to notice and a "Right of First Offer" under Section 6 of the 2000 Stockholders Agreement.[18] As a result, the Plaintiff argues, as to those two specific asset transfers, the 2000 Stockholders Agreement would not conflict with the First Refusal Right

---

[17] First Opinion at 64-65, 75, 77-79 (bold and italics in original); 621 B.R. at 719-20, 726, 727-28.

[18] For a detailed discussion of Intel's rights under Section 6 of the 2000 Shareholders Agreement, *see* the Court's First Opinion at 14-16, 68; 621 B.R. at 690-92, 721-22.

in paragraph 11 of the 1998 Contract.

But that does not mean that the latter right was not superseded, in its entirety, by Section 9.10 of the 2000 Stockholders Agreement. It was. The Plaintiff takes too narrow a view of Section 9.10. In pertinent part, that Section of the 2000 Stockholders Agreement states: "The provisions in this [2000 Stockholders] Agreement . . . will be deemed to supersede **any conflicting or inconsistent provisions contained in the [1998 Contract]** between Lowrey and [ECD]. . . ."[19] As for sales of Ovonyx assets, the provisions in Section 6 of the 2000 Stockholders Agreement clearly are "inconsistent" with the provision that the Plaintiff calls the "Asset ROFR" in paragraph 11 of the 1998 Contract.[20] Unambiguously, that is enough, under the wording of Section 9.10, to supersede the "Asset ROFR" in the 1998 Contract. More broadly, and as the Court described in great detail in the First Opinion, *many* provisions in the 2000 Stockholders Agreement clearly are inconsistent with the First Refusal Right in paragraph 11 of the 1998 Contract. That also is sufficient, without more, to mean that the entire First Refusal Right in the 1998 Contract was superseded (and thereby extinguished) by Section 9.10 of the 2000 Stockholders Agreement.

For all of the foregoing reasons, the Court must deny the Plaintiff's Motion. For the same reasons, the Court must grant the Defendant's motions to dismiss, which seek partial dismissal of the Plaintiff's Third Amended Complaint.

The Court will enter a separate order that is consistent with this Opinion.

---

[19] *See* First Opinion at 64-65, 17 (footnote omitted) (emphasis added) (quoting the 2000 Stockholders Agreement); 621 B.R. at 719, 692.

[20] *See* First Opinion at 68 (describing in detail this inconsistency); 621 B.R. at 721-22.

**Signed on October 13, 2023**  /s/ Thomas J. Tucker
Thomas J. Tucker
United States Bankruptcy Judge